IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　Plaintiff,<br>vs.<br>AERON HOWARD,<br>　　　　Defendant. | CR 06-146-TUC-DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the Magistrate-Judge for hearing on pretrial motions. Hearing on defendant's Motion to Suppress was held on September 7, 2006. Upon consideration of all the evidence presented and the arguments of respective counsel, the Magistrate-Judge recommends the District Court deny the defendant's motion.

## CHARGE:

It is alleged that on December 23, 2005, the defendant knowingly and intentionally possessed with intent to distribute 167 kilograms of marijuana in violation of Title 21, U.S.C. §§841(a)(1) and 841(b)(1)(B)(vii).

## EVIDENCE:

***Testimony of Jose Alverez***

1    Alvarez has been a Border Patrol agent for nearly three (3) years and has been stationed
2    at the Ajo Border Patrol Station during that period. That station covers the Lukeville Port
3    of Entry and part of the Tohono O'odham Indian Nation. He testified the village of
4    Menager's Dam is located on the Indian Nation, and it is known that a lot of drug and alien
5    smuggling occurs in that area which is about one mile north of the border between Mexico
6    and the United States. Two strings of barbed wire separate the two countries, and in some
7    areas the wire has been "knocked down."

8    On December 23, 2005, around 8:43 a.m. Alvarez, in a marked vehicle, was observing
9    traffic on Federal Route 1 at Milepost 2, two miles north of the border and one mile north of
10   the village of Menager's Dam. Although his shift was to have ended at 8 a.m., he had opted
11   to work some overtime because smuggling activity often occurs around shift changes and
12   "he wanted to hold down the border there for a little bit." He was parked on the side of the
13   road when he saw a green Cherokee vehicle pass his location with two occupants–an
14   African-American male and a Caucasian female. The ethnicity of the occupants caught his
15   attention because they did not appear to be tribal members and it is unusual to see non-tribal
16   members in that area. Alvarez ran a registration check on the Cherokee's license plate and
17   the vehicle was registered out of Phoenix. This was also unusual because most of the
18   vehicles seen in the area are registered from Sells or Ajo. The Cherokee seemed to be "kind
19   of riding low" in the rear.

20   Alvarez followed the Cherokee north for about 17 miles. At Milepost 19 the Cherokee
21   turned right into the village of GuVo and stopped. Alvarez pulled in behind the Cherokee
22   and noticed the driver had exited and was walking toward him (Alvarez). Alvarez testified
23   prior to the Cherokee's stopping, he had not activated any lights as a signal for the Cherokee
24   to stop or pull over. He advised the driver to get back into the Cherokee, and then turned on
25   his emergency lights. Alvarez stated he turned on his lights so the driver would return to the
26   Cherokee and so that any passing Border Patrol agent would notice him pulled off the road.
27
28

Alvarez testified it was unusual for a person being followed by a Border Patrol vehicle to stop without the agent first activating his overhead lights.

The driver returned to the Cherokee as directed and Alvarez proceeded to approach the Cherokee. Through the Cherokee's windows, Alvarez noticed several boxes covered with blankets. When he reached the driver's window—which was rolled down—he recognized the odor of marijuana. He then asked the driver to exit the Cherokee, handcuffed him and placed him in his patrol vehicle.

On cross-examination Alvarez testified he never observed any traffic violations by the Cherokee during the time he was following the vehicle. He said during the 15 minutes he followed the Cherokee he was several car lengths behind the vehicle, and no other vehicle ever got between them. After the Cherokee came to a stop in the village of GuVo and Alvarez stopped behind it, Alvarez activated his overhead lights when the driver exited the Cherokee and began "walking kind of fast towards me." At that time he also radioed his dispatch of his location and that he was "stopped with the vehicle" or "out with the vehicle." He stated it is standard procedure to notify dispatch of your location whenever you are going to exit your patrol vehicle. Alvarez admitted that he wrote in his report that he notified dispatch he was "performing a traffic stop on the Jeep." Alvarez also testified that when he ordered the driver to get back into the Cherokee, the driver was not free to leave the scene. The driver of the Cherokee had never turned off his engine, but when Alvarez reached the driver's window and smelled the marijuana he ordered the driver to turn off the engine.

## DISCUSSION:

Defendant argues that all evidence seized as a result of the stop on December 23, 2005, must be suppressed because Alvarez lacked reasonable suspicion to stop him. The government argues against suppression on the grounds that Alvarez did not initiate the stop; rather the defendant stopped of his own volition and the subsequent vehicle search was

1 reasonable and lawful. The government characterizes the encounter between Alvarez and
2 the defendant as consensual and not triggering a Fourth Amendment examination.

3     The evidence was uncontroverted that the defendant pulled his vehicle off the road
4 and came to a stop ***before*** Alvarez turned on his overhead lights or otherwise directed him
5 to stop. However, once the defendant was told to return to the Cherokee and Alvarez had
6 turned on his overhead lights the agent had effected a "stop" of the defendant; this analysis
7 is supported by the agent's testimony that the defendant was not then free to leave the scene.
8 The question then is whether Alvarez had reasonable or founded suspicion to detain the
9 defendant at that point

10     For a lawful *Terry* stop, the officer must have "a reasonable suspicion supported by
11 articulable facts that criminal activity 'may be afoot'."*United states v. Sokolow,* 490 U.S. 1,
12 7 (1989) (citing *Terry v. Ohio,* 392 U.S. 1, 30 (1968). "The officer's training and experience
13 are factors to consider if the officer's suspicions were reasonable." *Mattarolo,* 209 F.3d
14 1153, 1157 (9th Cir. 2000). "In the context of Border Patrol [stops], the factors to be
15 considered in determining whether 'reasonable suspicion' exists to justify stopping a vehicle
16 include, but are not limited to: (1) characteristics of the area; (2) proximity to the border; (3)
17 usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5)
18 behavior of the driver...; (6) appearance or behavior of passengers; (7) model and appearance
19 of the vehicle; and (8) officer experience." *United states v. Garcia-Barron,* 116 F.3d 1305,
20 1307 (9th Cir. 1997)(citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 885 (1975)).

21     In the present case, Alvarez listed the following factors to support his "reasonable
22 suspicion": he first observed the defendant two miles from the border between the United
23 States and Mexico; he had chosen to work overtime because it was known that smugglers
24 liked to work while the agents were changing shifts; the area around Menager's Dam was
25 known for smuggling activities; it was suspicious that the defendant stopped his vehicle and
26 then approached Alvarez without Alvarez having initiated the stop; neither the defendant nor
27
28

1  his passenger appeared to be tribal members which was unusual for the area; the Cherokee
2  was registered out of Phoenix and appeared to be riding low in the rear.
3  Considering the above listed factors and "the totality of the circumstances" this court
4  concludes that Border Patrol agent Alvarez had reasonable suspicion to detain the defendant
5  when he ordered him to return to the Cherokee and activated his overhead lights.  This
6  matured into probable cause when Alvarez saw the boxes covered with blankets and smelled
7  marijuana emanating from the Cherokee.

**RECOMMENDATION:**

In view of the foregoing it is recommended that after its independent review of the record the District Court **DENY** the defendant's Motion to Suppress.  This Report and Recommendation is being faxed to all counsel on this date.  Each counsel may serve and file objections within 10 days of today's date.  If objections are not timely filed the party's right to de novo review may be waived.  If objections are filed, they should be directed to the District Court by omitting the magistrate's initials from the caption, i.e., CR-06-146-TUC-DCB.

DATED this 12th day of October, 2006.

_____
Glenda E. Edmonds
United States Magistrate Judge